FILED BY _____

97 JUN 19 PM 12: 05

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| DOUGLAS LEESE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| LADY GRANCHESTER, JAMES | ) |
| SUENSON-TAYLOR, JOHN MOORES, | ) |
| JOHN D. NETTLETON, LEONARD | ) |
| WAILING VAN GEEST, NETWORK | ) |
| SECURITY MANAGEMENT LIMITED, | ) |
| JAMES J. RAPP a/k/a DANIEL | ) |
| PEEL, CHRISTOPHER MORE, | ) |
| COMMERCIAL DATA SERVICES | ) |
| LIMITED, WINTER INFORMATION | ) |
| NETWORK CORP., ACTION | ) |
| AUTOLINE, INC. d/b/a ACTION | ) |
| RESEARCH GROUP, BROWN AND | ) |
| ASSOCIATES, INC., ROBERT | ) |
| BROWN, ALISTAIR BROWN, and | ) |
| BERMUDA RESEARCH SERVICES | ) |
| LIMITED, | ) |
|  | ) |
| Defendants. | ) |

**97-1910**

Case No. _____ -CIV-

**CIV-LENARD**

Magistrate Judge: **MAGISTRATE JUDGE**
**DUBÉ**

**COMPLAINT**

Plaintiff, DOUGLAS LEESE ("Leese"), by his attorneys, Jaroslawicz & Jaros, for his Complaint herein alleges on knowledge as to himself, and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.    This is an action for damages brought by an
international businessman who resides in Miami Beach,
Florida, against a group of individuals, corporations and
their agents who have engaged in a series of deliberate,
malicious and tortious conduct in Florida and elsewhere
designed to cause and causing plaintiff great economic and
reputational losses.  As part of their concerted campaign to
harm plaintiff, the defendants, among other things, stole
and converted highly confidential records and business
materials, surreptitiously removed highly-sensitive and
confidential information from used typewriter ribbons,
illegally diverted telephone bills and records from a
telephone company and contacted persons identified in those
telephone records under false pretenses and by
misrepresentations in order to obtain and disseminate
adverse information about plaintiff and others.  Defendants'
actions, performed solely to gain an economic advantage for
themselves at the expense of plaintiff, constitute the torts
of conversion, invasion of privacy, tortious interference
with contracts and business opportunities, and the crimes of
mail and wire fraud.  In addition, defendants' ongoing and
related activities in furtherance of their improper goals
constitute a "pattern of racketeering activity," in
violation of the Racketeer Influenced and Corrupt

- 2 -

Organizations Act ("RICO"), 18 U.S.C. § 1962(c); a "pattern of criminal activity," in violation of the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. ch. 772; and conspiracy, in violation of both 18 U.S.C. § 1962(d) and Fla. Stat. § 772.103(4).

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 1964, 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

3.    Jurisdiction is proper in the State of Florida as to all the defendants pursuant to Florida Statute 48.193, which provides for jurisdiction against persons who perform tortious acts in the State of Florida either directly or through an agent, as these defendants did.

4.    Venue is properly placed in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391, since many of the acts and transactions complained of took place in this district, plaintiff is currently a resident of this district, some of the defendants are residents of this district, numerous witnesses are located in the vicinity of the Southern District of Florida, all of the defendants caused and/or performed illegal acts, directly or through their agents, within this district and this district is the most convenient place for the trial of this action.

## THE PARTIES

### The Plaintiff - Douglas Leese

5.    The plaintiff, Douglas Leese, is a citizen of St. Vincent and a resident of Miami Beach, Florida.

6.    For over twenty-five years, Leese has been engaged in interstate and international commerce, working, among other things, with and/or on behalf of major American corporations such as Westinghouse, major American defense contractors and multinational conglomerates in, among other places, Europe, Singapore and other parts of the Far East. The nature and extent of Leese's activities, and his various contacts around the world, involve highly-sensitive and confidential information, some of which are believed to be classified by the Department of Defense and other agencies of the United States Government.

### The "Littlewoods" Defendants

7.    The Littlewoods Organisation, plc ("TLO") is a major British corporation involved in operating gambling parlors, department stores and various other enterprises doing several billions dollars a year in business and purchasing products on a world-wide basis, including in the United States.

8.    TLO is considered to be Britain's largest privately-held company, controlled by the Moores family.

- 4 -

9.    Since at least 1995, TLO has been embroiled in a highly-publicized battle for control among its present and former directors.

10.    Defendant Lady Granchester ("Lady Granchester") is the daughter of the founder of TLO, Sir John Moores.

11.    Lady Granchester was a member of the Board of Directors of TLO and was a control person of TLO, together with other members of her family.

12.    Defendant James Suenson-Taylor ("Suenson-Taylor") is the son of Lady Granchester.

13.    Suenson-Taylor was a member of the Board of Directors of TLO and was a control person of TLO, together with other members of his family.

14.    Defendant John Moores ("Moores") is the brother of Lady Granchester, and the son of the founder of TLO.

15.    Moores is a member of the Board of Directors of TLO and, together with others, is a person controlling the acts of TLO.

16.    Defendant John D. Nettleton ("Nettleton") is a member of the Board of Directors of TLO and a person controlling the acts of TLO.

17.    Defendant Leonard Waling Van Geest ("Van Geest") was the Chairman of TLO and a person controlling the acts of TLO.

## The "Private Investigator" Defendants

18.   Defendant Network Security Management Limited ("Network Security"), is a British corporation doing business directly and through agents in the United States.

19.   Network Security is owned and controlled by a major international bank known as Hambros, Inc.

20.   Network Security purports to perform "undercover investigative" work for various clients and performed work for TLO and its directors, including the Littlewoods Defendants.

21.   Defendant Christopher More ("More") is a private investigator who does substantial business in the State of Florida, and is believed to have a residence in Florida.

22.   More is believed to be the president, shareholder and controlling person of defendant Commercial Data Services Limited ("Commercial Data").

23.   Commercial Data is a foreign corporation located on the Isle of Jersey and did extensive work through More and others in the State of Florida.

24.   More and Commercial Data acted as the agents, servants and representatives of Network Security and the other defendants and performed work on behalf of TLO and its directors, including the Littlewoods Defendants.

25.   Defendant James J. Rapp ("Rapp") resides in East Logan, Utah, and works as a private investigator, sometimes using various aliases, including the name "Daniel Peel."

26.   Defendant Winter Information Network Corp. ("Winter Information") is a Utah corporation operated by Rapp.

27.   Rapp and Winter Information acted as the agents, servants and representatives of Network Security, More, TLO and its directors, including the Littlewoods Defendants.

28.   More and Rapp were hired by Network Security directly and performed work in the United States in interstate commerce, including in the State of Florida.

29.   Defendant Action Autoline, Inc. d/b/a Action Research Group ("Action Research"), is a Florida corporation located in Cooper City, Florida.

30.   Winter Information performed work through Action Research as agent, servant and representative of Network Security, More, TLO and its directors, including the Littlewoods Defendants.

31.   Defendant Brown and Associates, Inc. ("Brown and Associates") is a Florida corporation located in Orlando, Florida.

32.   Defendant Robert Brown is believed to be the principal and controlling person of Brown and Associates.

- 7 -

33.   Robert Brown and Brown and Associates performed
work as agents, servants and representatives of Network
Security, More, TLO and its directors, including the
Littlewoods Defendants.

34.   Defendant Alistair Brown operates and controls the
defendant Bermuda Research Services Limited ("Bermuda
Research"), based in Bermuda.

35.   Bermuda Research performed services in interstate
and international commerce.

36.   Alistair Brown and Bermuda Research acted as
agents, servants and representatives of Network Security,
More, TLO and its directors, including the Littlewoods
Defendants.

### FACTS COMMON TO ALL COUNTS

37.   The actions performed by the Littlewoods
Defendants and the Private Investigator Defendants were
intended to have, and did have, consequences in interstate
commerce in the United States, including in the State of
Florida.

### The Battle for Control of TLO

38.   In or about 1995 and for a period prior thereto,
there was internal dissension at TLO and on its Board of
Directors, which resulted in a highly-publicized battle for
control of TLO.

39.   There was a chief executive on TLO's Board by the name of Barry Dale, who was dismissed by TLO on or about March 23, 1995.

40.   At or about the same time, another executive of TLO, Mr. Prodip Guha, was also dismissed by TLO.

41.   The ongoing battle for control of TLO, which has involved all of the Littlewoods Defendants, has also affected certain other former TLO executives such as Sir Desmond Pitcher.

**The Littlewoods Defendants'
Determination to Win At All Costs**

42.   As a consequence of the dispute between TLO and its former executives and others, the Littlewoods Defendants were determined to take any action possible to gain whatever advantage they could, without regard to the legality of the methods they employed.

43.   In that vein, and among other things, TLO and the Littlewoods Defendants hired Network Security to "investigate" Barry Dale, including Dale's relationship with a company called Lorad, which has been described as a Far Eastern trading company.

44.   TLO alleged that Leese had a relationship with Lorad and asserted that there may have been some improprieties in the relationship between Mr. Dale and arrangements reached between TLO and Lorad.

### The Private Investigators'
### Illegal Acts and "Dirty Tricks" Against Leese

45.   Network Security began its so-called "investigation" of Leese, which involved what TLO's own employees have described as "Gestapo-like tactics," and included illegal and improper conduct either directly or through its agents.

46.   Network Security's activities were pervasive and without regard for their legal propriety.  Indeed, former directors and other employees of TLO have accused Network Security of asking them outright to engage in illegal actions (Exhibit "A," London Times article of April 16, 1995).

47.   Network Security, acting at all times as the agent, servant and representative of TLO and the Littlewoods Defendants, and as their agent in fact, also proceeded to hire, directly or indirectly, the remaining Private Investigator Defendants to perform certain dirty tricks and illegal acts, and to obtain and disseminate adverse and other information concerning Leese through any means, whether legal or not.

48.   For example, Network Security, either directly or indirectly, hired More and his organization, Commercial Data, to perform certain tasks and obtain and disseminate certain information concerning Leese.

- 10 -

49.   More in turn, and as agent for TLO, the Littlewoods Defendants and Network Security, then hired, among others, Brown and Associates, and Robert Brown, to obtain copies of Leese's personal and company telephone bills and confidential papers, and the telephone bills and confidential papers of the entities with which Leese had any relationship.

50.   More has admitted under oath that the aforesaid acts were accomplished in the United States of America through his agents, whom he described as, among others, Robert Brown and Brown and Associates.

51.   Among other things, in or about June 1995, the defendants followed a deceptive scheme of obtaining the telephone bills of Leese and his related business entities from the Bermuda Telephone Company through a fraudulent and illegal scheme.

52.   Through methods of deception and fraudulent misrepresentation, the exact details of which are not as yet known, the defendants and their agents, including Rapp and Winter Information, fraudulently induced the Bermuda Telephone Company to fax them telephone bills of Leese and/or a company called Drax Holdings Limited, with which Leese is affiliated.

53.   Investigations conducted by plaintiff's representatives indicate that Rapp a/k/a Daniel Peel and

Winter Information made numerous telephone calls to Action Research between April 26, 1995 and June 28, 1995.

54. The records of Rapp and Winter Information also show that there were at least nine telephone calls to the Bermuda Telephone Company placed by Rapp and Winter Information, which calls were made for the purpose of obtaining information concerning Leese or entities with which Leese had a relationship.

55. Brown and Associates has admitted that it used Action Research as an agent for the purpose of obtaining information concerning plaintiff and his related business entities.

56. Robert Brown, the principal of Brown and Associates, has admitted to plaintiff's representative that he was instructed directly by More to obtain the telephone records of Drax Holdings Limited pertaining to Leese and that Brown then hired Action Research as his agent towards that purpose.

57. The defendants were fully aware that their conduct constituted fraud by wire in direct violation of 18 U.S.C. § 1343, which subjects a violator to a fine and imprisonment of up to five years.

58. By check dated June 19, 1995, and sent via United States mail, Action Research paid Winter Information,

Network Security and Rapp the sum of $2,114 for their services in improperly obtaining the Drax Holdings' telephone records, which records they sought to use against Leese.

59.   The defendants have engaged in other dirty tricks to sully the reputation of Leese and to obtain information which they could use in litigation that TLO has brought against Leese and/or in the litigations brought by TLO with respect to Barry Dale and/or Prodip Guha.

60.   Among other things, the Littlewoods Defendants and their agents, particularly Bermuda Research and Alistair Brown, removed private and confidential materials from private property in Bermuda; surreptitiously took information off typewriter ribbons and documents, and otherwise wrongfully sought to obtain and disseminate information concerning Leese and the business entities with which he might be affiliated, which information was sought to be secretly obtained and to be used against Leese or Dale and Guha in litigation and/or to compel Leese to give in to TLO's demands.

## The Damage to Leese

61.   Leese was involved with various businesses and highly confidential business enterprises including business in the United States, some of which involved governmentally-involved or other highly confidential business projects.

- 13 -

62.   The defendants have caused injury to Leese's projects and business dealings in the United States and abroad by, among other things, obtaining confidential information and contacting persons with whom Leese was directly or indirectly involved in business relationships.

**COUNT ONE**
**(AGAINST ALL DEFENDANTS)**
**VIOLATION OF RICO, 18 U.S.C. § 1962(c)**

63.   Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" inclusive, with the same force and effect as if more fully set forth at length herein.

**The "Persons"**

64.   At all times, the Littlewoods Defendants and their agents, the Private Investigator Defendants, were persons within the meaning of 18 U.S.C. §§ 1963 and 1964(c).

**The "Enterprise"**

65.   At all times, the Littlewoods Defendants and their agents, the Private Investigator Defendants, were members of, employed by or associated in fact with an enterprise engaged in, or the activities of which affected, interstate or international commerce within the meaning of 18 U.S.C. § 1961(4).

66.   This enterprise includes the Littlewoods Defendants, TLO and all persons and entities who shared the

- 14 -

common purpose of seeking to achieve results in their internal corporate battle with Sir Desmond Pitcher and others, and/or their litigation with Barry Dale, Prodip Guha and Leese, which litigation is still taking place in the courts of Great Britain, and to obtain and disseminate information illegally in order to obtain an unfair advantage for TLO as against Dale, Guha and Leese.

67.   The defendants both participated directly in certain of the acts complained of herein in violation of 18 U.S.C. §§ 1341 and 1343, and aided, abetted, counseled or induced the commission of acts by other persons associated with the enterprise in violation of 18 U.S.C. §§ 1341, 1342 and 1343, in order to accomplish the common purpose of the enterprise, and are responsible for the racketeering activity of all the defendants who at all times acted in the furtherance of the scheme against the plaintiff and others, including Dale and Guha, who were victims of the defendants' conduct.

## The Improper and Illegal Acts Perpetrated by the Defendants and Their Enterprise Against Leese

68.   Commencing in late 1994 or early 1995, the exact dates not being known to the plaintiff at this time, and probably continuing until today, the defendants, being those persons associated with and members of the enterprise herein referred to, induced and caused the illegal diversion of

- 15 -

telephone bills, private and confidential documents, and other materials to the various Littlewoods Defendants and at all times directly and indirectly conducted and participated in the conduct of enterprise affairs with a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and 18 U.S.C. § 1962(c).

69.   The defendants knowingly conducted and participated in the conduct of the enterprise in a variety of ways, including but not limited to:

(a)   TLO and the Littlewoods Defendants caused to be hired Network Security, Commercial Data, Rapp, Action Research, Brown and Associates, Bermuda Research and others as their agents for the purpose of engaging in illegal acts and obtaining plaintiff's confidential telephone records and documents;

(b)   The defendants, and specifically Brown and Associates, Robert Brown and Action Research, agreed to obtain telephone records from the Bermuda Telephone Company through fraudulent misrepresentations made by mail and/or by interstate and international wire;

(c)   The defendants arranged for Bermuda Research and Alistair Brown to wrongfully obtain confidential and private documents and typewriter ribbons from private property which plaintiff at all times intended to be confidential, by misappropriating and converting them;

- 16 -

(d)   The defendants then contacted persons whose identities were set forth in the confidential materials and telephone records that were obtained by fraud and misrepresentations, and sought to obtain and disseminate adverse information concerning the plaintiff;

(e)   The defendants otherwise acted in an improper manner, violating the laws of the United States, the State of Florida and other jurisdictions, in order to obtain and disseminate or seek to obtain and disseminate detrimental and adverse information concerning the plaintiff, Dale and Guha, which the defendants then sought to use either in litigation in England against these persons, or to coerce these persons to follow TLO's directives; and

(f)   Network Security and its agents sought to intimidate certain persons and to bribe someone at plaintiff's son's place of business to turn over certain confidential information concerning the plaintiff; Network Security offered an employee at plaintiff's son's place of business a tape recorder so that the defendants could secretly record the plaintiff's son and obtain confidential information concerning the plaintiff and others.

## The Predicate Acts

70.   All of the defendants knowingly conducted or participated in the predicate acts perpetrated by the enterprise in a variety of ways including, but not limited

- 17 -

to, through the activities of Robert Brown, Action
Resources, Network Security, Winter Information, Rapp and
others, and their activities, which included misrepresenting
who they were, committing wire fraud in violation of 18
U.S.C. § 1343, committing mail fraud in violation of 18
U.S.C. § 1341, using fraudulent means in violation of 18
U.S.C. § 1342, and improperly obtaining and converting
confidential telephone records, documents and other
confidential materials belonging to Leese and some of his
business activities.

### Mail Fraud

71.   In furtherance of, and for the purpose of
promoting, executing or attempting to execute their scheme,
the defendants placed and caused to be placed in post
offices and authorized depositories for mail, materials
which were later caused to be delivered and caused to be
sent to and from the United States and within the United
States by the United States Postal Service, including checks
from one defendant to another; information that had been
wrongfully obtained was forwarded through the United States
Postal Service and/or international postal services; and the
use of such material in connection with the scheme
constitutes a specific violation of 18 U.S.C. § 1341 and 18
U.S.C. § 2.

## Wire Fraud

72.   In furtherance of, and for the purpose of executing and attempting to execute the aforesaid scheme and artifice to illegally obtain and disseminate information concerning the plaintiff and to extort a settlement from the plaintiff in litigation in Great Britain, the defendants on numerous occasions, transmitted and caused to be transmitted writings, signs, signals and sounds by means of wire communications in interstate, foreign and international commerce.   Each use of the wire communications in connection with the described scheme and artifice constituted a separate violation of 18 U.S.C. § 1343 or 1341.

73.   The use of wire communications includes, but is not limited to, the defendants' agents, including Brown, Winter Information, Rapp and Action Research, who would call the Bermuda Telephone Company and seek to have the Bermuda Telephone Company send the plaintiff's telephone bills to the defendants and their agents.

74.   Commencing on April 1, 1995, Rapp a/k/a Daniel Peel and Winter Information, as agents for the other defendants, called at least the following telephone numbers:

| | |
|---|---|
| (801) 755-0280 | (801) 753-1474 |
| (801) 755-3210 | (801) 753-2188 |
| (801) 755-6042 | (801) 755-2129 |
| (801) 755-8266 | (801) 755-2178 |
| (801) 755-9304 | (801) 753-1146 |
| (801) 755-9415 | (801) 753-1879 |
| (801) 753-0831 | |

## The "Pattern of Racketeering Activity"

75.   Commencing some time in early 1995 and apparently continuing through today, the defendants repeatedly engaged in a pattern of acts, directed at individuals and business enterprises, including the plaintiff, which are indictable under 18 U.S.C. § 1341, mail fraud; 18 U.S.C. § 1343, wire fraud; 18 U.S.C. § 2, aiding and abetting; 18 U.S.C. § 1342, providing a fictitious name or address, and other acts in which the defendants engaged and which constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961 (1)(B).

76.   The defendants' repeated violations of 18 U.S.C. §§ 1341, 1343 and 2 extended over a period of over one year, and were neither isolated nor sporadic events; but rather involved regular and repeated acts and violations to accomplish the illegal purposes of the enterprise.   These acts were related to each other by virtue of (a) common participants; (b) common victims; (c) common methods of commission; and (d) the common purpose and common result of obtaining and disseminating confidential information through illegal and other means which could be used against the plaintiff, Dale and Guha, any business entities they may have been affiliated with, and others.

- 20 -

77.  The defendants' repeated violations of 18 U.S.C. §§ 1341, 1343 and 2 constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### The Nature and Extent of Damages to Leese

78.  As a direct and proximate result of the defendants' predicate acts and racketeering, which activities constitute a pattern of racketeering activity, and of the defendants' participation in the enterprise in violation of 18 U.S.C. § 1962(c), Leese was harmed in his business activities; he was unable to conduct his business in a proper manner; and he was otherwise damaged, all of which constitute damages to business or property within the meaning of 18 U.S.C. § 1964(c), in an amount which will be determined at trial, but which is now estimated to exceed Twenty Million Dollars ($20,000,000).

### COUNT TWO
### (AGAINST ALL DEFENDANTS)
### CONSPIRACY IN VIOLATION OF RICO, 18 U.S.C. § 1962(d)

79.  Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" and "64" through "78" inclusive, with the same force and effect as if more fully set forth at length herein.

80.  Defendants entered into agreements and conspired to commit the predicate acts and other wrongful conduct described herein.

81.   Defendants knew that their actions were unlawful and part of a pattern of racketeering activity designed to harm plaintiff.

82.   Defendants' conspiracy violates 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate 18 U.S.C. §§ 1962(a), (b), and (c).

83.   As a direct and proximate result of the defendants' violation of 18 U.S.C. § 1962(d), Leese was harmed in his business activities; he was unable to conduct his business in a proper manner; and he was otherwise damaged, in an amount which will be determined at trial, but which is now estimated to exceed Twenty Million Dollars ($20,000,000).

## COUNT THREE
### (AGAINST ALL DEFENDANTS)
### VIOLATION OF THE FLORIDA CIVIL REMEDIES
### FOR CRIMINAL PRACTICES ACT, FLA. STAT. CH. 772

84.   Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" and "64" through "78" inclusive, with the same force and effect as if more fully set forth at length herein.

85.   Defendants' conduct, and their wrongful and illegal association and activities designed to harm plaintiff, constitute a violation of the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. ch. 772.

86.   As a direct and proximate result of the defendants' predicate acts, which activities constitute a pattern of criminal activity, and of the defendants' participation in the enterprise in violation of Fla. Stat. ch. 772, Leese was harmed in his business activities; he was unable to conduct his business in a proper manner; and he was otherwise damaged, all of which constitute damages to business or property within the meaning of the statute, in an amount which will be determined at trial, but which is now estimated to exceed Twenty Million Dollars ($20,000,000).

## COUNT FOUR
### (AGAINST ALL DEFENDANTS)
### CONSPIRACY IN VIOLATION OF THE FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, FLA. STAT. § 772.103(4)

87.   Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" and "64" through "78" inclusive, with the same force and effect as if more fully set forth at length herein.

88.   Defendants entered into agreements, conspired and endeavored to commit the predicate acts and other wrongful conduct described herein.

89.   Defendants knew that their actions were unlawful and part of a pattern of criminal activity designed to harm plaintiff.

90.   Defendants' actions violate Fla. Stat. § 772.103(4), which makes it unlawful to conspire or endeavor to violate Fla. Stat. §§ 772.103(1), (2) or (3).

91.   As a direct and proximate result of the defendants' violation of Fla. Stat. § 772.103(4), Leese was harmed in his business activities; he was unable to conduct his business in a proper manner; and he was otherwise damaged, in an amount which will be determined at trial, but which is now estimated to exceed Twenty Million Dollars ($20,000,000).

### COUNT FIVE
### (AGAINST ALL DEFENDANTS)
### INVASION OF PRIVACY

92.   Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" and "64" through "78" inclusive, with the same force and effect as if more fully set forth at length herein.

93.   By wrongfully obtaining plaintiff's telephone records, personal and business papers, and interfering with plaintiff's business without his knowledge or consent, the defendants have willfully and deliberately interfered with plaintiff's right of privacy.

94.   As a direct and proximate result of the foregoing, plaintiff suffered damage to his business and reputation, severe mental anguish and distress, and he has been

- 24 -

otherwise damaged in an amount to be determined at trial, but which is now estimated to exceed Twenty Million ($20,000,000) Dollars.

95.   As a result of the defendants' willful, malicious, fraudulent, oppressive, extreme and outrageous conduct, plaintiff reserves the right to amend this complaint to seek punitive damages upon appropriate showing.

**COUNT SIX**
**(AGAINST ALL DEFENDANTS)**
**CONVERSION**

96.   Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" and "64" through "78" inclusive, with the same force and effect as if more fully set forth at length herein.

97.   The defendants wrongfully converted to themselves Leese's records and private property, including telephone numbers and business materials that were highly confidential and which confidentiality Leese preserved.

98.   Leese intended that these materials be extremely confidential, and that they be shown to no one.

99.   By misappropriating Leese's information and business opportunities, the defendants have converted Leese's property.

100.   As a direct and proximate result of defendants' activities, Leese has been damaged and is entitled to

recover actual damages in an amount to be determined at trial but is now estimated to exceed Twenty Million ($20,000,000) Dollars.

101. As a result of the defendants' willful, malicious, fraudulent, oppressive, extreme and outrageous conduct, plaintiff reserves the right to amend this complaint to seek punitive damages upon appropriate showing.

## COUNT SEVEN
## (AGAINST ALL DEFENDANTS)
## TORTIOUS INTERFERENCE

102. Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs of this complaint numbered "1" through "62" and "64" through "78" inclusive, with the same force and effect as if more fully set forth at length herein.

103. At all times, defendants had actual or constructive knowledge of Leese's business affairs, and the existence of actual contracts, business and business opportunities that would be threatened by their actions.

104. Defendants' activities constitute tortious interference with Leese's contracts, business and business opportunities.

105. Defendants' activities were performed without justification and solely with malice towards Leese.

106. As a result of the foregoing, Leese has been damaged and is entitled to recover actual damages in an

amount to be determined at trial but now estimated to exceed Twenty Million ($20,000,000) Dollars.

107. As a result of the defendants' willful, malicious, fraudulent, oppressive, extreme and outrageous conduct, plaintiff reserves the right to amend this complaint to seek punitive damages upon appropriate showing.

**JURY DEMAND**

108. Plaintiff hereby demands a trial by jury of all issues so triable.

**WHEREFORE**, plaintiff Leese demands judgment against the defendants, both jointly and severally, as follows:

COUNT ONE:     an amount to be determined at trial but in excess of Twenty Million Dollars ($20,000,000), trebled in accordance with 18 U.S.C. § 1964;

COUNT TWO:     an amount to be determined at trial but in excess of Twenty Million Dollars ($20,000,000), trebled in accordance with 18 U.S.C. § 1964;

COUNT THREE:   an amount to be determined at trial but in excess of Twenty Million Dollars ($20,000,000), trebled in accordance with Fla. Stat. § 772.104;

COUNT FOUR:    an amount to be determined at trial but in excess of Twenty Million Dollars ($20,000,000), trebled in accordance with Fla. Stat. § 772.104;

COUNT FIVE:    an amount to be determined at trial but in excess of Twenty Million Dollars ($20,000,000);

COUNT SIX:        an amount to be determined at trial but
                  in excess of Twenty Million Dollars
                  ($20,000,000);

COUNT SEVEN:      an amount to be determined at trial but
                  in excess of Twenty Million Dollars
                  ($20,000,000);

together with all costs, disbursements and reasonable

attorney's fees; and for such other and further relief as to

the Court may seem just and proper.

                  JAROSLAWICZ & JAROS, ESQS.
                     Attorneys for Plaintiff
                  150 William Street, 19th Floor
                  New York, New York 10038
                  (212) 227-2780
                  Facsimile: (212) 732-6746


           By: _____
                  Isaac M. Jaroslawicz
                  Fla. Bar No. 979510
                     Of Counsel
                     9540 Collins Avenue
                     Surfside, Florida 33154
                     (305) 864-5553
                     Facsimile: (305) 864-5645

# Littlewoods was warned over private detectives

## Gumshoes' tactics worried lawyer

**FORMER DIRECTORS of** Littlewoods, Britain's biggest private company, have accused investigators, hired by the retail group, of threatening behaviour and asking them to undertake "illegal" acts.

In correspondence seen by The Sunday Times, one former director claims he was asked to tape and elicit information from a secretary at another firm with which Littlewoods was doing business.

Directors have written to the Moores family — the secretive clan that owns Littlewoods — and to the board to complain about the "Gestapo-like" tactics of the detectives from Network Security Management, which is owned by Hambros Bank, the blue-chip City investment house.

Another manager wrote to the then chief executive, Barry Dale, complaining of an "interrogation" by Network's investigators.

Several employees have resigned in disgust over their treatment. The row seems certain to deepen the management crisis at Littlewoods, which has been hit by high-level departures and collapsing staff morale.

Littlewoods' own solicitors, Alsop Wilkinson, are understood to have warned the company earlier this year about the methods that Network is said to have used. David Jacks, an Alsop Wilkinson partner, became concerned after speaking to George McKillop, a Network

### Randeep Ramesh

director, who indicated that he could obtain details of telephone calls by paying a BT employee. Jacks thought this would be seen as an inducement to the BT employee to break his contract.

It is understood that Alsop Wilkinson has recently been replaced on some of Littlewoods' cases by a Manchester legal firm, Pannone Napier.

The latest accusations from former staff centre on Network's and Littlewoods' alleged ability to obtain copies of BT and other telephone bills which are then used as a basis for interrogating dissident executives about whom they have been calling and why.

Harry Thomas, Littlewoods' press officer, refused to comment on Network Security. Alsop Wilkinson said that information was confidential.

The Network probe was launched on instructions from senior members of the Moores family, apparently prompted by a desire to regain control from the management. The family has been helped by Jim Michie, group finance director, and Bob Willett, who first brought in Network to investigate staff in Littlewoods' chain-store and mail-order divisions in May last year.

The family's actions have already led to the sacking of two key directors and plunged the

group into a management crisis. Dale was dismissed as chief executive last month and Prodip Guha, his deputy, last October. Both had been interviewed by Network.

Dale was subjected to a five-hour grilling and presented with a dossier compiled by private detectives. He was asked about his personal finances and his use of company perks. He repeatedly told executives that all the benefits he had received were on the company records.

Ruben Berg, the lawyer acting for Dale, said that his client had been dismissed "without explanation or justification. Network appears to have played a major part in this". Dale is understood not to have received any compensation.

The former chief executive's itemised telephone bill was redirected to an address in south London. Dale complained to BT, which said that it "could not understand how it had happened".

Sir Desmond Pitcher, chairman of North West Water and a Littlewoods non-executive director, believes he may also have been targeted. Last month someone telephoned his office and tried to obtain details of his bank account.

Members of the Moores family met last week to discuss the growing disquiet. Littlewoods is without a chief executive, and many younger shareholders are growing anxious at the lack of management.

Exhibit "A"

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

*Douglas Leese*

**DEFENDANTS** 97-1910

*Lady Granchester et al.*

**CIV-LENARD**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  *DADE*
(EXCEPT IN U.S. PLAINTIFF CASES)

*A Dade 97 cv 1910 JAL RLO*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  *Surrey, England*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
*Jaroslawicz & Jaros
150 William St., 19th Fl
NY, NY 10038   (212)227-2780*

ATTORNEYS (IF KNOWN)

**MAGISTRATE JUDGE**

**DUBÉ**

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
**DADE**, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION
(PLACE AN X ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only)
(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.

*Torts of conversion, invasion of privacy & tortious interference 18 U.S.C. §1962(c), 1962(a), Fla. Stat ch. 772,*

**IVa.** *10* days estimated (for both sides) to try entire case

## V. NATURE OF SUIT
(PLACE AN X IN ONE BOX ONLY)

**A  CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B
- ☐ 153 Recovery of Overpayment of Veteran's Benefits B
- ☐ 160 Stockholder's Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**A  TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

- ☐ 362 Personal Injury-Med Malpractice
- ☐ 365 Personal Injury-Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending B
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**B  FORFEITURE / PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**A  LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations B
- ☐ 730 Labor/Management Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Ret. Inc. Security Act B

**A  BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**A  PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**B  SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**A  FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**A  OTHER STATUS**
- ☐ 400 States Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc. B
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12USC3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions * A or B

**A  REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure B
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**A  CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**B  PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence Habeas Corpus
- ☐ 530 General *
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other *
- ☐ 550 Civil Rights * A or B

## VI. ORIGIN
(PLACE AN X IN ONE BOX ONLY)

- ☒ 1. Original Proceeding
- ☐ 2. Removed From State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Refiled
- ☐ 5. Transferred from another district (Specify)
- ☐ 6. Multidistrict Litigation
- ☐ 7. Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A  **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $** *$20,000,000*

☐ Check YES only if demanded in complaint
**JURY DEMAND:** ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):

JUDGE _____   DOCKET NUMBER _____

DATE *6/9/97*

SIGNATURE OF ATTORNEY OF RECORD  */s/*

UNITED STATES DISTRICT COURT
S/F I-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. *678039*
Date Paid: *06/19/97*

Amount: *150.00*
M/fp: _____