NIGHT BOX
FILED

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

OCT 31 1997

CARLOS JUENKE
CLERK USDC / SDFL / MIA

|  |  |  |
|---|---|---|
| DOUGLAS LEESE, | ) | No. 97-1910-CIV-LENARD |
|  | ) | Magistrate Judge Dube |
|  | ) |  |
| Plaintiff, | ) | **PLAINTIFF'S** |
|  | ) | **MEMORANDUM OF LAW** |
| v. | ) | **OPPOSING MOTIONS** |
|  | ) | **TO DISMISS BY DEFENDANTS** |
| LADY GRANCHESTER, et al., | ) | **ROBERT BROWN, BROWN &** |
|  | ) | **ASSOCIATES, NETWORK SECURITY** |
| Defendants. | ) | **MANAGEMENT LIMITED, AND THE** |
|  | ) | **"LITTLEWOODS DEFENDANTS"** |

### Plaintiff's Preliminary Statement

The five motions to dismiss filed by Robert Brown ("Brown"); Brown & Associates, Inc. ("Brown & Associates"); Network Security Management Limited ("Network"); and the "Littlewoods Defendants" (Lady Grantchester, James Suenson-Taylor, John Moores, John D. Nettleton and Leonard Wailing Van Geest) are substantially similar -- and, in their desperate effort to dismiss this case before any discovery can be conducted, all simply ignore either the well-pleaded factual allegations of the complaint or the legal standards governing the claims.  Among other things:

**Jurisdiction**.  The complaint repeatedly alleges in great detail that the "Private Investigator Defendants" acted at all times as the "agents, servants and representatives" of the Littlewoods Defendants and Network when they stole highly confidential business records, surreptitiously removed confidential information from used typewriter ribbons, illegally diverted telephone bills and records from a telephone company and contacted persons identified in those

telephone records under false pretenses in order to obtain and disseminate adverse information about plaintiff. Yet those British defendants ignore the plain text of the statute that grants jurisdiction over "[a]ny person, whether or not a citizen or resident of this state, who personally *or through an agent* . . . commit[s] a tortious act within this state."

**Failure to Plead With Particularity / RICO**. In arguing that some particulars of their actions are not alleged, defendants do not account for the broad latitude that courts grant the initial pleadings and the well-accepted proposition that a RICO complaint that sets forth the necessary elements and general fraudulent scheme (which this complaint certainly does), need not, prior to discovery, detail each mailing or fraudulent use of wires *because that information is generally known only to the defendants at this stage of the proceedings. See New England Data Servs. v. Beecher*, 829 F.2d 286 (1st Cir. 1987).

As will be demonstrated below, defendants' other arguments, including those with respect to standing, *forum non conveniens*, and the sufficiency of the state law claims are equally unavailing. Prior to having an opportunity for discovery to properly flesh out additional facts regarding jurisdictional and other issues in this complex, multi-defendant case, it would certainly be premature to dismiss this action.

## The Legal Standard Governing Motions
## To Dismiss Precludes These Motions Being Granted

As only defendants Brown and Brown & Associates properly concede, a complaint need only contain a "short and plain statement of the claim." Rule 8(a), Fed. R. Civ. P. A motion to dismiss pursuant to Rule 12(b) tests only the facial sufficiency of the complaint, and "the threshold of sufficiency that a complaint must meet to survive is exceedingly low." *Quality Foods de Centro America S.A. v. Latim Am. Agribusiness Dev. Corp.,* 711 F.2d 989, 995 (11th Cir. 1983). The court must draw all inferences in favor of the plaintiff. *Id.* More important, the complaint should not be dismissed unless "the court finds beyond a reasonable doubt that the claimant can prove no set of facts entitling them to the relief sought." *Id.* (Citing *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Accordingly, " a Fed. R. Civ. P. 12(b)(6) motion will rarely be granted." *Nichols v. Wal-Mart Stores*, 958 F. Supp. 583, 584 (M.D. Fla. 1997).

This complaint gives sufficient notice to defendants of the nefarious scheme in which they are alleged to have participated -- either as principal or agent. The test on a motion to dismiss is *not* whether the complainant will ultimately prevail, *but whether it is entitled to offer evidence in support of the claims plead.*" Id. (emphasis added). The allegations already contained in the complaint, together with the details expected to be obtained during discovery, provide sufficient basis to defeat defendants' motions and entitle Lesse to attempt to prove his claim to the ultimate factfinder.

## Summary of Facts [1]

Plaintiff is an international businessman who has a residence in Miami Beach, Florida. Over the years, he has had substantial business dealings with a corporation in England known as Littlewoods, which is the largest privately held corporation in England dealing in numerous lines of business including retail stores and casinos.

As part of a major dispute and control contest among members of the Littlewoods board of directors, one faction of the board sought to attack another by calling into question one of the substantial business deals (worth over $15 million) between Littlewoods and a company allegedly controlled by the plaintiff. That faction (which includes those defendants named herein as the "Littlewoods Defendants") has even gone so far as to have Littlewoods commence litigation in England against the plaintiff's company seeking to nullify an agreement pursuant to which Littlewoods owes the plaintiff substantial funds.

In order to advance their interests to gain control of Littlewoods, these individual defendants have also utilized their substantial economic resources in an effort to discredit the plaintiff by among other things, hiring private investigators in, among other places, the United States and Singapore to acquire and disseminate negative information about him, his family, and businesses to which he is linked.

---

1. *See* Complaint, *passim*, and Affidavits of Plaintiff Douglas Lease (attached hereto as Ex. "1"); David Jaroslawicz (attached hereto as Ex. "2"); and Neal Sroka (attached hereto as Ex. "3"). Should this Court review the numerous affidavits submitted by the Littlewoods Defendants and Network, notwithstanding that factual denials properly belong in an Answer, plaintiff respectfully requests that this Court consider his affidavits, too, if only to note the blatant omissions and inconsistencies contained in defendants' arguments. However, plaintiff is not seeking to have these motions converted to summary judgment, since there has been no discovery whatsoever and plaintiff should not be put in the position of having to meet the higher summary judgment threshold without some discovery. *See* Fed. R. Civ. P. 56(f) (providing for adequate discovery prior to a summary judgment motion).

- 3 -

That these individual defendants hired others to investigate plaintiff is confirmed by George Wyllie McKillop, who identifies himself as the Deputy Managing Director of Network, and whose affidavit was submitted to an English court. *See* Ex. 2-A.[2]

The complaint alleges that the Littlewoods Defendants retained Network to obtain information about the plaintiff, and that either the Littlewoods Defendants directly, or Network on their behalf, also retained the other defendants, which are all private investigation firms of one kind or another (the "Private Investigator Defendants"), to seek 'dirt' on the plaintiff.

At this time, prior to any discovery being had, plaintiff concedes that he does not know the exact structure or relationship of the dealings between the Littlewoods Defendants and Network or the other Private Investigator Defendants. Plaintiff was obviously not included at their organizational meetings. The relationship and exact role in the scheme of each of these defendants is one of the principal areas that plaintiff needs to explore through discovery in this action.

What we do know is that Christopher More, who admits to being the proprietor of defendant Commercial Data Services, Ltd., concedes in an affidavit he submitted to an English court (in an action in which none of these defendants are parties) that he and his firm were retained by the Littlewoods Defendants to investigate the plaintiff. (*See* Ex.3-A). Plaintiff has already noticed More's deposition (to which no one has objected) and, subject to working out the inevitable scheduling conflicts with defendants' counsel, hopes to obtain his testimony in the next few weeks.

The accompanying affidavit of Sroka (Ex. 3) also indicates that, during a recent conversation, Mr. More *admitted* that he had received instructions directly from Littlewoods Defendant Van Geest, and not through the ordinary Littlewoods channels that one would expect

---

2. Although Network portrays itself on this motion as a small company with limited resources unable to defend itself against litigation in the United States, Mr. McKillop's affidavit clearly identifies Network as a subsidiary of Hambro Group Investments Ltd., which is itself a subsidiary of Hambros PLC, a major international bank. Moreover, Mr. McKillop explains that Network "is one of the premier investigation companies in the United Kingdom and counts amongst both past and present clients a number of the top 100 companies listed on the UK stock exchange." Clearly, Network's argument here of being a "small" provincial company are disingenuous and its argument that it has no resources to defend litigation in the United States should be soundly rejected.

if this were an "ordinary" investigation executed on behalf of Littlewoods as opposed to a private affair by certain directors.[3]

Of course, plaintiff does not contend that there is anything wrong or illegal about retaining a private investigator to use lawful means to obtain negative information about another person with whom one is doing business. The gist of this action involves the *illegal* measures employed by the defendants in their investigation of the plaintiff, which plaintiff alleges constitute mail fraud and wire fraud in violation of 18 U.S.C. §§ 2 and 1341-1343 and, taken together with each other and with the ongoing worldwide campaign the Littlewoods Defendants were (and may still be) waging against the plaintiff, constitute a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. 1962.

These illegal means included trespassing on private property for the purpose of pilfering trash in order to retrieve documents and used typewriter ribbons from which the defendants reconstructed information concerning the plaintiff.[4]

Most egregiously, the illegal means employed by certain of the Private Investigator Defendants -- who are alleged throughout the complaint to have been acting as agents of the Littlewoods Defendants and Network -- also included making a telephone call or series of telephone calls from the United States and using a fictitious ruse to deceive the Bermuda telephone company into sending them duplicate telephone bills of Drax Holding Limited, a corporation with which the plaintiff is connected. The objective of this scheme was to determine whom the plaintiff had called and then to contact those people in order to seek and/or disseminate negative information about him.

### This Court Has Personal Jurisdiction Over the Littlewoods and Network Defendants Pursuant to the Florida Long-Arm Statute

The Littlewoods Defendants and Network have advanced the argument that this Court does not have personal jurisdiction over them under Florida's long-arm statute, Fla. Stat.

---

3. Sroka's testimony as to what Mr. More told him is certainly admissible as party admissions under Rule 801(d)(2), Fed. R. Evid.

4. The McKillop affidavit confirms that the defendants engaged in searches of trash as an investigative tool, referring to it under the euphemism of "full company search" (Ex. 2-A ¶ 10).

§ 48.193. This argument should be rejected since the plaintiff clearly has set forth sufficient facts in the complaint to support long arm jurisdiction over the defendant in this Court.

Florida's long-arm statute, Fla. Stat. § 48.193, provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(b) committing a tortious act within this state.

The Eleventh Circuit has left no doubt that this long arm statute is to be interpreted broadly, holding that jurisdiction under § 48.193(1)(b) "is not limited to a situation where an act in Florida causes an injury in Florida but also 'reaches the situation where a foreign tortious act causes injury in Florida.'" *Robinson v. Giarmarco & Bill*, P.C., 74 F.3d 253, 254 (11th Cir. 1996) (quoting *Sun Bank v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991)).

In this case, the complaint clearly and repeatedly alleges that the Littlewoods defendants -- who are admittedly based in England, not Florida -- hired Network and, either through Network or directly, also hired the other Private Investigator Defendants who are alleged to have committed tortious acts in Florida.

This Circuit also recognizes that the existence of an agency relationship is an issue of fact, not one of law. *Sun Bank*, 926 F.2d at 1036. In this case, the Littlewoods Defendants are alleged to have hired investigators as agents, and some of the investigators in turn hired other investigators who were sub-agents. Accordingly, there is, at best, a great factual dispute as to who was whose agent -- a dispute which this Court should certainly not attempt to parse without discovery, if at all.

These defendants also argue that the defendants' obtaining of the plaintiff's telephone bills from the Bermuda telephone company under false pretenses through a fraudulent artifice did not take place in Florida and that therefore there is no long arm jurisdiction. This argument ignores the Eleventh Circuit's holding in *Robinson*, cited above, where the court clearly asserted that when any tortious act committed outside the state causes injury within the state, there is long arm jurisdiction within the State of Florida. Plaintiff clearly has alleged damages to him in the state.

Moreover, other facts alleged in the complaint that provide a basis for Florida long arm jurisdiction are voluminous and compelling: (1) Plaintiff maintains a residence in Florida; (2) Brown & Associates, one of the Private Investigator Defendants retained by the Littlewoods Defendants or their agents, is alleged to be a Florida corporation doing business in Orlando, Florida; (3) More owned a home in Florida that was a focal point and clearinghouse for many of the alleged illegal activities; (4) Action Autoline d/b/a Action Research Group, according to defendant Brown & Associates (Ex. 3-B), is apparently a Florida corporation that certainly was doing business in Florida; and (5) Brown & Associates contends that the Bermuda telephone call information was obtained by Action Research Group. *Id.*

Plaintiff has clearly made sufficient allegations to warrant at least discovery with respect to the jurisdictional questions of which defendants were acting on behalf of whom and to trace and thoroughly document all the connections to Florida.[5] The Sroka affidavit, in which sworn testimony confirms that More has already admitted that he was hired by the defendant Van Geest makes it abundantly clear that plaintiff has a good-faith basis to believe that such discovery would be productive.

Because there is clearly a Florida nexus to this case, and, as demonstrated below, Florida is the *only* jurisdiction where there is a basis for obtaining personal jurisdiction against all these defendants, the Network and Littlewoods Defendants' effort to have this case dismissed for lack of personal jurisdiction should be rejected.

---

5. Although they improperly interject new facts as part of their effort to dismiss for lack of personal jurisdiction, the out-of-state defendants are careful to phrase their statements very carefully and narrowly in an apparent effort to avoid providing information useful to the plaintiff on the jurisdictional issues. For example, Network argues that it did not retain any other investigators "to do any work in connection with [the plaintiff] Leese in Florida" (Network's "Threshold" Motion at 3; see also id. at 4-7). This evasive language does not preclude Network from having hired investigators from another state to investigate Leese, or intending that Leese be investigated in other states (although the investigation may have led the hired investigators to Florida), or that Network hired an investigator to investigate one of Leese's companies rather than Leese himself. Whatever this language means, it is clear that the defendants are being self-serving and evasive and are not telling the whole story, which is exactly why discovery is necessary before deciding jurisdictional issues.

Similarly, the Littlewoods Defendants evasively parrot each other in their mirror-image affidavits, each asserting that he or she did not hire any agents in Florida "for the purpose of the commission of any of the acts complained of in the complaint." These improperly-interjected statements -- which, at best, should be asserted in an Answer and *not* on a motion to dismiss -- do not preclude the Littlewoods Defendants having hired anyone who may have subcontracted the "dirty work" to others, or hiring investigators while turning a blind eye to the methods employed by their agents. These and other questions would be answered through the process of discovery where the true meaning behind these defendants' evasive language can hopefully be discerned.

### Maintaining this Action in Florida
### Does Not Violate the Due Process Clause

The same defendants who objected to personal jurisdiction also raise the spurious argument that maintaining this action in Florida will violate the defendants' Due Process rights. This argument should also be rejected.

The standard for Due Process analysis was recently articulated by the Eleventh Circuit in *Robinson v. Giarmarco & Bill*, P.C., 74 F.3d 253 (11th Cir. 1996), where the court noted:

> First, we must decide whether each defendant has established minimum contacts with Florida. Second, we must determine whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

74 F.3d at 254 (internal quotations omitted); see also *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663 (11th Cir. 1993).

The Eleventh Circuit has explained that the "minimum contacts" test is satisfied when the defendant's contacts with the forum "proximately result from actions by the defendant that create a substantial connection with the forum state." *Cronin*, 980 F.2d at 670.

This test is easily satisfied here, where the complaint clearly and repeatedly alleges that defendants Action, Winter, Brown & Associates and Brown were all Florida entities hired in Florida by the Littlewoods Defendants and/or Network as their agents. Christopher More had a house in Florida that served as the clearinghouse for the information being obtained about Leese. There are clearly contacts with Florida and those contacts are exactly what this case is about.

With regard to the fair play and substantial justice prong of the Due Process test, the Eleventh Circuit has explained that certain factors must be considered:

> The factors include the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive policies.

*Cronin*, 980 F.2d at 671.  In this case, these factors weigh heavily in plaintiff's favor since the out-of-state defendants are people of substantial means who are well able to retain lawyers in

Florida to defend them, and indeed already have done so and Florida is the only forum where a court can have jurisdiction over all these defendants. Dismissing against the board of director and Network defendants would mean that this action would proceed in Florida against the remaining defendants and there would have to be a separate action against the other defendants in a different jurisdiction. That would clearly not serve the interests of judicial economy.

## This Action Should Not Be Dismissed
## on the Grounds of *Forum non Conveniens*

The Littlewoods Defendants and Network suggest that this case should be dismissed on the ground of *forum non conveniens*. They contend that the courts of England would provide another forum for this dispute. This argument is misleading and should be rejected.

The simple fact is that the courts of England would have no jurisdiction whatsoever over any of the defendants Action, Brown & Associates, Brown or Winter, who are all Florida residents and who, to plaintiff's knowledge, have not done anything at all in England. The actions complained of in this case took place in Florida. The plaintiff resides in Florida. More has a house in Florida. The damages occurred in Florida.

Dismissing the case against the Littlewoods Defendants and Network and relegating the plaintiff to suing those defendants in England would mean that the actions against those defendants, who are alleged to have hired and instructed the other defendants, would have to be adjudicated separately from the action against the defendants who followed the orders that caused the plaintiff damage, essentially separating the queen bee from the drones.

Moreover, proof of any case in England would require evidence that only the Florida defendants can offer. The Littlewoods Defendants would like to have this action as against them transferred to England precisely because they are aware that there would be substantial evidentiary problems if the plaintiff were required to get the Florida defendants to go to England to testify.[6]

---

6. The affidavit of plaintiff Leese (Ex. 1) also notes that one reason the Littlewoods Defendants may wish to have this case heard in England is because the defendant Lady Grantchester's late father was an influential appellate judge in England, and they hope to obtain a home court advantage. (Ex. 1-A). Florida is the only proper forum
(continued...)

These defendants have far reaching global business dealings and are fabulously wealthy members of the British aristocracy. They will suffer no prejudice or untenable financial burden if they are required to continue defending themselves in Florida.

While Network glibly posits that an action could easily proceed in England -- and that it would "consent" to jurisdiction there, even the English barrister who has submitted an affidavit on behalf of Network stops short of actually saying that the plaintiff could bring a claim in England. All he really says is that there "might" be a claim. That is far too slender a reed upon which to justify dismissing this action.[7]

Accordingly, the application to dismiss for forum non-conveniens should be denied.

### Discovery Should Be Permitted
### On Any Alleged Jurisdictional Issues

Courts have not hesitated to hold that, where a plaintiff has not been able to conduct discovery on jurisdictional issues, all the allegations in the plaintiff's complaint must be accepted as true by a court deciding a motion based on jurisdictional issues. *See, e.g., Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990); *Landoil Resources Corp. v. Alexander & Alexander Servs.*, 918 F.2d 1039 (2d Cir. 1990).

At the very least, discovery is generally permitted on the jurisdictional issues before a motion to dismiss for lack of personal jurisdiction is decided. *Black v. Bryant*, 905 F. Supp. 1046 (M.D. Fla. 1995); *Baron Philippe de Rothschild v. Paramount Distillers*, 923 F.2d 433 (S.D.N.Y. 1996); *Data Disc, Inc. v. Systems Technology*, 557 F.2d 1280, 1289 n.5 (9th Cir. 1977). This applies doubly in a case such as this where, as plaintiff has amply demonstrated, none of the defendants is telling the whole story and the facts are rather complex.

Plaintiff respectfully submits that the complaint sets forth the necessary jurisdictional allegations, and that the Littlewoods Defendants and Network could and should

---

6. (...continued)
where this case can be heard on a level playing field.

7. Finally, the English litigation already pending has absolutely nothing to do with the claims asserted here. That litigation involves a business dispute and there is no reason to believe that any court would honor the tort claims asserted herein as an appropriate counterclaim in that case.

properly make their denials of agency in a filed Answer. However, if this Court sees fit to credit factual denials on this motion to dismiss, plaintiff's ability to file an amended pleading would be substantially impaired without the ability to obtain formal discovery.

Accordingly, at the very least this motion should be held in abeyance until plaintiff has an opportunity to conduct discovery on the jurisdictional issues and then make an additional submission with respect to the jurisdictional issues after discovery.

### Plaintiff Has Adequately
### Pleaded A RICO Cause of Action

In an obvious effort to distract this Court from the merits and substance of the plaintiff's claim, the moving defendants have each raised numerous picayune and technical objections to the manner in which the plaintiff's RICO claim is pled in the complaint. The defendants claim that the plaintiff's complaint is deficient because it does not contain all the particulars of exactly who did exactly what exactly when. In other words, the defendants are objecting because the plaintiff's complaint does not contain all the detail that the plaintiff would have to prove in order to prevail at trial, which is clearly not the standard of what is required for a pleading.

The law is clear that, under modern standards of pleading, it is not necessary for each technical element of a claim to be pleaded individually. It is enough that the pleading set forth a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Posner v. Minnesota Mining & Mf'g*, 713 F. Supp. 562 (E.D.N.Y. 1989) (quoting Fed. R. Civ. P. 8(a)(2)); *see Nordic Bank PLC v. Trend Group*, 619 F. Supp. 542, 561 (S.D.N.Y. 1985); *Stephens v. American* Home, 811 F. Supp., 937, 958 (S.D.N.Y. 1993). As stated most eloquently by Chief Judge Cardozo, "The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman and every slip was fatal. It takes a broader view today." *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 90 (1917).

The complaint in this action is considerably more detailed than complaints generally are, particularly when the defendants are in a large group of private investigators who surreptitiously performed their work and attempted to conceal their conduct from the plaintiff.

Moreover, even a RICO complaint asserting mail fraud and wire fraud allegations should not be dismissed at the pleading stage for some factual deficiency without the plaintiff receiving some opportunity to conduct discovery. *New England Data Servs. v. Beecher*, 829 F.2d 286 (1st Cir. 1987). Even where a complaint plainly fails to comply with the particularity required by Rule 9(b) (a situation not present here), the plaintiff should be afforded an opportunity for discovery before being required to make factual showings. *Id.* As the court noted in *New England Data Services*,

> In an appropriate case, where, for example, the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the exclusive control of information as to use is in the exclusive control of the defendant, the court should make a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint.
>
> We advocate this procedure because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts. In the instant case, it is seemingly impossible for the plaintiff to have known exactly when the various defendants phoned or wrote to each other or exactly what was said. The plaintiff clearly set out a general scheme, which very plausibly was meant to defraud the plaintiff, and also probably involved interstate commerce. In this day and age, it is difficult to perceive how the defendants would have communicated without the use of the mail or the interstate wires.

829 F.2d at 290-91. In this case, the plaintiff has clearly at least pleaded sufficient facts to show a probability that there was a fraudulent scheme making use of the wires and mails by the defendants.

The act of calling the Bermuda telephone company and using a false pretense and ruse to induce it to send the bills to the defendants are clearly alleged to be -- and clearly are -- a "scheme or artifice to defraud" using the telephone wires in violation of the federal wire fraud statute, 18 U.S.C. § 1343. Mail fraud was also involved, since the scheme depended on the mails for its success of having the telephone bills sent to the defendants. Moreover, it is reasonable to infer and conclude that, once those bills were obtained, the defendants either mailed them to each other or communicated the information contained in them to each other by wire through

telephone conversations or fax.[8]  Accordingly, plaintiff should at the very least be afforded an opportunity to conduct discovery on the issue of the particulars of the mail fraud and wire fraud.[9]

### The Complaint Adequately Alleges
### A "Pattern" Under RICO

Defendants suggest that where the predicate acts required under RICO are separated by a few weeks, those acts cannot consitute a satisfactory RICO "pattern" of racketeering activity.  Defendants are mistaken.

While "'two isolated acts of racketeering do not constitute a pattern,'" *Cox v. Administrator, United States Steel*, 17 F.3d 1386 (11th Cir. 1994) (quoting *Sedima v. Imrex*, 473 U.S. 479, 496 n. 14 (1985)), where the acts are related to each other and there is some continuity, the RICO "pattern" element is satisfied. Acts are deemed related if they "'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.*, (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).

---

8. The defendants argue that, even if the wire fraud conduct alleged above did occur, the complaint is defective because it does not allege exactly who picked up the telephone and exactly which defendants were involved in what capacity. That argument is spurious.

   The complaint clearly alleges that *all* the defendants participated in this conduct, either as the actual perpetrators or as the instigators of the perpetrators for whom the perpetrators were acting as agents. The complaint, as well as the annexed affidavits of McKillop, More and Sroka, make it clear that Leese will have no problem proving at trial that the Littlewoods Defendants were the principals for whose benefit and at whose request the investigative activities were being carried out. The McKillop affidavit explains that Network sometimes used subcontractors to do this type of investigative work. The defendant Brown & Associates even admits in a letter that they were involved in obtaining information about toll calls from Bermuda (Ex. 3-B), and that they used a subcontractor, namely the defendant Action Research Group in Cooper City, Florida, to obtain that information.

9. The defendants also advance the misleading claim that the plaintiff cannot assert a claim with respect to the purloining of the telephone company records because Drax Holding Corporation allegedly obtained a default judgment with respect to this activity in the Southern District of New York.  Tellingly, defendants fail to annex even a single sheet of paper to support that assertion. The reason for this omission is obvious: there was no default judgment in New York.

   While an action was commenced by Drax in New York, and although defendants in that action did default, no judgment was entered as a result of jurisdictional concerns -- because the plaintiff learned that Florida and not New York was the site of the conspiracy (Ex. 2 & 2-B).

In *Cox*, the court found that what one party argued was a single episode of bribery could be viewed by a jury as a scheme consisting of multiple violations, sufficiently interrelated and continuous to constitute a pattern of racketeering activity. 17 F.3d at 1397. Thus, the issue of whether there is a "pattern" is an issue of fact for the jury and should not be determined by the court at the pleading stage on a pre-answer motion.

In this case, the complaint clearly alleges at least several telephone calls violating the wire fraud statute, 18 U.S.C. § 1343, and at least several mailings violating the mail fraud statute, 18 U.S.C. § 1341. The ongoing and extensive nature of the defendants' conduct as alleged in the complaint also belies the argument that the alleged activities were merely "sporadic" with no threat of continuing. This argument simply ignores plaintiff's well-pleaded allegations.

Moreover, the fight for control at Littlewoods and the English litigation are ongoing and anticipated to continue for years to come.[10] Plaintiff clearly alleges that these defendants have embarked on an all-out and improper campaign to discredit him, including hiring investigators all over the world including Florida and Singapore (Ex. 2-A (Affidavit of McKillop)) to dig up and/or disseminate "dirt" on the plaintiff.

Indeed, after discovery a jury may well reject the defendant's argument that these were isolated events and conclude in favor of the plaintiff that these were interrelated events which constitute a "pattern" of racketeering activity.

### The Complaint Adequately Alleges
### Mail and Wire Fraud Violations

Defendants also argue that plaintiff has not properly alleged violations of the mail and wire fraud statutes. First, defendants argue that it was the Bermuda telephone company that was misled, not the plaintiff, when through the defendants' fraudulent artifice the Bermuda telephone company was induced to send telephone bills belonging to Drax Holdings, a company

---

10. Even the affidavit of the English solicitor submitted by the Littlewoods Defendants notes that the English litigation will not reach trial until 1999.

with which the plaintiff is affiliated. The defendants' position is that if anyone has a claim as a result of this conduct, it should be the Bermuda telephone company.

Merely to state this argument is to refute it. The Bermuda telephone company had no interest in the privacy of the plaintiff's telephone bills. The disclosure of the telephone bills did not cause the Bermuda telephone company one iota of damage. Disclosure of the telephone bills clearly damages only persons with an interest in the privacy of the telephone bills, not the telephone company. Thus, even though the target of the fraud, in other words the person or entity that was induced to give something up by the false pretenses employed by the defendants, was the telephone company, the clear victim was the person with an interest in the confidential information contained in the telephone bills, in this case the plaintiff.

The defendants here are alleged to have harmed plaintiff no less than one who defrauds a bank by a wire fraud to take money out of a depositor's account. It is the depositor who is the real victim, not the bank.

Defendants suggest that there is precedent for the proposition that mail fraud cannot be a RICO predicate act unless the RICO plaintiff was the direct victim and target of the mail fraud, such as a situation where the plaintiff is personally induced to part with something of value based on fraudulent statements. However, once again, courts do not support that view.

Defendants confuse the doctrines of "legal cause" with "proximate cause." The execution of a fraudulent scheme may cause damage to a plaintiff even when the fraud does not directly, *i.e.* proximately, cause the plaintiff's injury. As one court has explained:

> The appellants insist that § 1964(c)'s "by reason of" language contemplates that a civil RICO suit may be maintained, not only in mail fraud cases where the deceitful mailing is the blade rushing down toward the guillotine victim, but also in cases involving more grandiose schemes to cheat, where the mailing is but part of the frame that holds the blade.
>
> We have never held otherwise. Inasmuch as an injury may have more than one proximate cause, our rule that reliance be shown in civil RICO fraud actions does not also dictate that the fraud be the sole legal cause of the plaintiff's injury, so long as it is a legal cause. The only caveat is that, where fraud is alleged as a proximate cause of the injury, the fraud

must be a classic one. In other words, the plaintiff must have justifiably
relied, to his detriment, on the defendant's material misrepresentation.

*Chisolm v. Transsouth Fin. Corp.*, 95 F.3d 331 (4th Cir. 1996).

Plaintiff here is not necessarily alleging that the defendants' fraud proximately
caused the plaintiff's injury. Here, as in *Chisolm*, the defendants' fraud may simply be a legal
cause of the injury -- the fraud was part of the frame that holds the guillotine blade. The
complaint clearly alleges that defendants made fraudulent use of the mails and wires to obtain
personal information about the plaintiff that was then used against the plaintiff and caused him
harm. Thus, the fraud is certainly a legal cause of the plaintiff's injury, even if it was not a direct
proximate cause.

Defendants also argue that the plaintiff allegedly has no standing to sue because
the telephone bills that were fraudulently purloined by the defendants were in the name of Drax
Holdings, and not in the plaintiff's name personally. According to the defendants, plaintiff
therefore has no right to assert any claim with respect to those bills. However, this argument falls
of its own weight, too.

The complaint clearly alleges that the plaintiff, not Drax, was being investigated --
and the Answer filed in this matter by defendant Christopher More concedes that point (More
Answer ¶ 1, admitting that he was retained to investigate the plaintiff, not Drax). The telephone
account in question was used by the plaintiff and the information obtained from that bill revealed
confidential business information about the plaintiff. The records are clearly alleged to have been
purloined in order to obtain information about the plaintiff.

Defendants' analysis would compel the conclusion that no executive would have
standing to ever complain against one who purloins his office's telephone bill to obtain
confidential personal information, because the bill technically belongs to the company. Such an
approach is ludicrous and would obviously create an industrial espionage free-for-all with few
consequences for people who purloin telephone bills to gather information about their
adversaries or targets.

## The Complaint Adequately Pleads
### the Role of Each Defendant for Purposes of RICO

In response to defendants' argument that plaintiff has not adequately pleaded the individual role of each defendant with respect to the underlying mail and wire fraud, plaintiff simply refers to the well-established principle that, where a person or a corporation hires some other person or entity to act as agent and the agent then commits mail fraud or wire fraud in furtherance of the business of the principal, both the principal and the agent are chargeable with that mail and/or wire fraud as RICO predicates. *See, e.g., Chisolm*, 95 F.3d at 336. Here, of course, the complaint repeatedly alleges that each of the moving defendants acted as principal or agent.

Similarly, any argument made by the Littlewoods Defendants that they were merely members of a corporation's board has been rejected by the Eleventh Circuit in *Cox*, where the court held that, because corporations can only act through their agents, corporate principals who carry on the business of the corporation through a pattern of racketeering activity can be individually sued under RICO as the agents of the corporation. 17 F.3d at 1406.

Also, a person who merely aids and abets a RICO violation is also liable for RICO upon a showing that (1) the defendant was generally more aware of the defendant's role as part of an overall improper activity at the time that he provides the assistance; and (2) the defendant knowingly and substantially assisted the principal violation. *Cox*, 17 F.3d at 1410.

Here, again, the complaint alleges a sufficient basis to proceed. Whether or not plaintiff prevails at trial, or even on a motion for summary judgment, is an entirely different matter. Tellingly, as noted in the Sroka Affidavit (Ex. 3), defendant More has already admitted that he reported directly to defendant Van Geest.

## The Complaint Adequately Pleads
### the Role of Each Defendant for Purposes of RICO Conspiracy

With respect to defendants' objection to plaintiff's allegations of RICO conspiracy, the Eleventh Circuit has noted that, even with respect to the ultimate burden on

plaintiff, "the existence of the conspiracy agreement does not have to be proven by direct evidence. Instead, it can be inferred from the conduct of the alleged participants or from circumstantial evidence of the scheme." *Cox*, 17 F.3d at 1410-11 (quotations and citations omitted). Here, the complaint clearly alleges that the Littlewoods Defendants instructed the Private Investigator Defendants to commit illegal acts and provided the financing incentive for the operation. Inasmuch as those defendants are alleged to have participated in either the commission of the acts or the orchestration of the acts, all may be found liable as RICO persons, RICO aiders and abettors or RICO conspirators, distinctions that can be made more accurately after discovery and by the jury.

The complaint has clearly alleged at least a sufficient RICO claim to survive a pre-answer and pre-discovery motion to dismiss. The defendants should not be permitted to avoid dealing with the merits of this case through the use of smokescreen arguments attempting to keep this case forever in the pleading stage. The defendant's motion to dismiss should therefore be denied.

### The Complaint Adequately Alleges
### A Florida State-Law Claim for Invasion of Privacy

Florida unquestionably recognizes an actionable tort where one intrudes upon a person's private space or disseminates confidential information about the person. *Agency for Health Care Admin. v. Associated Indus.*, 678 So.2d 1239 (Fla. 1996); *see Cason v. Baskin*, 155 Fla. 198, 20 So. 2d 243 (1944); *Thompson v. City of Jacksonville*, 130 So. 2d 105 (Fla. 1st DCA 1961), *cert. denied*, 147 So. 2d 530 (Fla. 1962). Indeed, Florida recognizes no affirmative defense to this tort. *Id.*

The complaint clearly alleges that the defendants went to great lengths and expended tremendous efforts to invade the plaintiff's space and property, decipher his spent typewriter ribbons, obtain telephone bills reflecting calls he had made, all in an effort to obtain confidential information about him and disseminate it to his adversaries -- exactly the type of conduct this tort was intended to prevent.

No. 97-1910-CIV-LENARD

### In the Alternative, Plaintiff Should Have
### an Opportunity to File an Amended Complaint

Plaintiff respectfully submits that, for all of the foregoing reasons, each of the defendants' motions should be denied.

If, for any reason, this Court concludes that plaintiff's pleading is deficient in any manner because of any technical pleading or other defect, plaintiff respectfully requests that leave be granted for plaintiff to file an amended complaint rectifying whatever pleading deficiencies this Court may conclude exist.

### Conclusion

For all of the above-mentioned reasons, the defendants' motions should be denied in all respects, and this Court should issue a firm discovery schedule.

Dated: October 31, 1997

Respectfully submitted,

JAROSLAWICZ & JAROS, ESQS.
Attorneys for Plaintiff
150 William Street, 19th Floor
New York, New York 10038
(212) 227-2780
Facsimile: (212) 732-6746

By: _____

Isaac M. Jaroslawicz
Fla. Bar No. 979510
Of Counsel
9540 Collins Avenue
Surfside, Florida 33154
(305) 864-5553
Facsimile: (305) 864-5645

- 19 -

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

# PLEASE REFER TO COURT FILE